Good morning, my name is John Rhodes, I'm from the Missoula office of the Federal Defenders of Montana. I represent Dave Peoples. Yesterday I flew out to Seattle and was getting ready for this morning's argument in my hotel room. I discovered a case issued by the court on July 22nd, U.S. v. Grand The issue is to whether or not the conviction at issue here qualifies as a crime of violence under the career offender guideline. Unfortunately for Mr. Peoples, it does. So I believe that moots our argument at this juncture of the litigation. Obviously we will file a petition for re-hearing en banc. I wasn't sure given that development if the court wanted me to address the Blakely-Ameline issues or if the court simply wanted me to sit down. I believe, Your Honor, that Blakely, as applied by this court in Ameline to the guidelines, would prevent this enhancement. The reason being is this was simply not alleged in the indictment. Therefore, we have the district court making factual claims to the district court. Right. Well, I'm sorry. I wasn't very clear. What would the sentence be if the enhancement were not valid? If the enhancement were valid? Were not valid. Oh, sorry. It would be reduced down to 188. I can't remember the guidelines range exactly, but substantially reduced in that. And obviously, so he's doing more time than he would be but for the career offender enhancement. Okay. So your client is going to be in prison for a lengthy amount of time in any event? Yeah, regardless. Yes, he's going to be in prison somewhere between 15 and 20 years without the enhancement and much more with the enhancement as he's currently been sentenced. Okay. If you were to give it your best shot on the crime of violence, what would it be? Well, Your Honor, there'd be three basic arguments. First, what I believe the court did in the Grand Blanc decision is took the 2L1.2 guideline, the aggravated felony guideline, in the illegal reentry guideline and took the definition of crime of violence there and said that also applies to career offender. But as both parties briefed to this panel in the supplemental briefing that was filed, there are two different definitions between those guidelines. And it's a maxim of statutory construction that where a legislative body, or in this case, the Sentencing Commission, uses different language, they do that purposely. And therefore, because there are different definitions, you can't simply say because it qualifies as a crime of violence under 2L1.2, it also qualifies under the career offender guideline. Second, we would also go to the California Penal Code of Issues, Section 288, subsection A. There, there is no mention in terms of an element of threat, force, violence. Yet if you look at Section 288B and Section 288C of that same code, those statutory provisions require threats, violence, force, or coercion. And the case law in California is very clear that the reason the legislature in California created subsection A was to relieve the government, the state, of the obligation to prove violence, threats, coercion, some sort of act without consent. So California's old law showed that what our client was convicted of here simply was not a crime of violence. Finally, under grand law, you could have a situation where somebody under this particular California statute, the victim has to be under the age of 14. You could have a high school senior at some sort of high school function with a freshman who's 13 years old, dancing, somehow suggestively brush that person, let's just assume the younger person is a girl, brush her buttocks, brush her inner thighs, brush her breast, be convicted under California Penal Code, Section 288, subsection A, and then have that deemed a crime of violence for career offender purposes. So those would be the three basic. That's not very likely. That is true, Your Honor, but it is possible. And under the Taylor categorical approach, which would govern here because the modify approach really isn't available because if you look at the charging documents, they basically adopted the statutory language from 288A. But you do concede that grand law pretty much forecloses those arguments, right? Yeah, I would take out the words pretty much. Is grand law final? No, that's actually, there's a petition for rehearing on Bonk pending with the court, or at least there was one filed in early August. I'm not sure if it's pending or not. Okay. Thank you. All right. Do you want to hear anything about Ameline or Blakely? Obviously, that's an issue that's in great flux right now. I don't think so. I think the Supreme Court is going to, we hope the Supreme Court is going to resolve that for us. All right. Thank you, Your Honors. Thank you. Good morning, Your Honors. May it please the Court. My name is Josh Van de Wettering. I'm Assistant United States Attorney in Missoula, Montana. I would, I guess at the outset, thank Mr. Rhodes for bringing up the grand law case, which I was not aware of, but will certainly willingly accept. Did you know about it before this morning? I did not know about it this morning, before this morning. I have not had a chance to read it yet. Although I think we had a very strong argument, even without that case, that this is a crime of violence, based on the potential for danger to a child any time a child is sexually assaulted. With respect to Mr. Rhodes' hypothetical, could there be a brushing and then later an enhancement to a career offender level, I think that person might have an as-applied unconstitutionality argument. But that's not the case here. The case here is that Mr. Teeples, in fact, took advantage of a 12-year-old child and did so in the very way that has worried this Court in cases like Wood, where children, although there isn't perhaps an outward piece of physical injury, it is difficult, if not impossible, to suggest that attacking a child in that way does not present a real risk of injury, even psychological, or especially psychological injury. So what I would prefer to talk about, unless the Court has other questions about that, is the Blakeley issue, because I don't think that even if the Supreme Court were to resolve the Booker case, and in doing so, essentially uphold Ameline, I don't think this is a case that needs to be sent back for resentencing. And the reason is because the whole issue here is an issue of Mr. Teeples' prior conviction. And, of course, Prandtl and Blakeley specifically exclude from the jury's consideration the fact of any previous conviction. It's no doubt true that the district court would have to make, even under those circumstances, there will be times when the district court has to make a determination of how to classify or characterize a prior conviction. And that's certainly the case here. But I don't think anything in Blakeley or Ameline or Apprendi suggests that the Court is simply incapable of making factual determinations about what it means to have a prior conviction or whether or not a prior conviction counts in a particular fashion. So for those reasons, I would suggest that there is no Blakeley problem here, even aside from the cases that seem to, in our current state of flux, are weighing against the government. Of course, our basic position is that Blakeley doesn't apply to the federal sentencing guidelines. Thank you. What about the government's point that this Blakeley, so-called Blakeley issue, has to do with prior convictions? Your Honor, I've got several responses to that. First, Blakeley and Ameline mentioned the fact of a prior conviction. They do so because of the Supreme Court's decision in Alvarez-Torres, which predated Apprendi. Here we're not talking about the fact of a prior conviction. No one disputes that Mr. Teeples has a prior conviction under California Penal Code Section 288, Subsection A. What we're disputing is the nature of that conviction, the status of that conviction. Well, it's a classification of the conviction, but isn't that a question of law? It's not something that would be submitted to a jury, is it? No, we believe it is a factual determination, the fact being whether or not it is a crime of violence. And that's why I've raised it. Well, can it be, if it's under your contention, that we should follow the categorical approach of Taylor? It's categorical. You don't look at the underlying facts. You still look at the charging documents, and that's the sort of factual determination that we believe Blakeley and Ameline have now taken away from the court and switched to the jury. And that's our position. It's not just the fact of the conviction. We're beyond that question. And, in fact, all this litigation, excuse me, over crime of violence. You don't really mean that, do you? Yes. What jury is going to decide that? The jury that's considering whether or not he's guilty is going to have his whole criminal record to determine whether it was a crime of violence. His past convictions were crimes of violence? Yes, that's our position. And, obviously, that would be, from a trial lawyer's standpoint, that may be something that we don't even want to have the jury exposed to. So we may be willing to waive that and have the district court make that determination beyond a reasonable doubt standard. But we believe that the nature of the conviction is something now subject to the jury's province, not the court's. Interesting. All right. Do you want to hear more about Flakeley and Ameline? I don't think so. Does anybody have any further questions? I have some other theories that I'm sure the court probably won't agree with, but I believe are arguable. Thank you. We appreciate your forthrightness. Thank you. In finding the Danvers case. The case just argued is submitted.
judges: Schroeder, Browning, Tashima